IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

EARL DISHMAN,
ADAM WELLMAN,
ARLIE CRANE, and
UTILITY WORKERS' UNITED ASSOCIATION,
LOCAL 537, an unincorporated association,

          Plaintiffs,

v.                              CIVIL ACTION NO.   3:21-0066

WEST VIRGINIA-AMERICAN
WATER COMPANY, a corporation,

          Defendant.


**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant West Virginia-American Water Company's Motion to Dismiss. ECF No. 12. For the reasons herein, the Motion is **DENIED.**


**I. BACKGROUND**

Defendant West Virginia-American Water Company ("WVAWC") is a public utilities corporation operating in West Virginia. Am. Compl. ¶ 6, ECF No. 11. Plaintiff Utility Workers' United Association, Local 537 ("the Union") is the certified collective bargaining agent for WVAWC's Huntington unit. *Id*. ¶ 4. Plaintiffs Earl Dishman, Adam Wellman, and Arlie Crane were three of WVAWC's Huntington district employees who were represented by the Union for collective bargaining purposes. *Id*. ¶ 8.

Until September 2018, the Utilities Workers Union of America, AFL-CIO, System Local 537 ("the predecessor Union") represented the WVAWC's Huntington employees for collective bargaining purposes. *Id*. ¶¶ 11-12. The predecessor Union was certified by the National Labor Relations Board ("NLRB") as the exclusive collective bargaining representative for those employees. *Id*. ¶¶ 11-12. On September 5, 2018, one of Defendant's employees filed a Petition for Decertification, leading the NLRB to decertify the predecessor Union and instead certify Plaintiff Union as the representative after elections. *Id*. ¶ 4.

The predecessor Union had negotiated a collective bargaining agreement ("CBA") with Defendant. *Id*. ¶ 11. When the NLRB certified Plaintiff as the new collective bargaining representative, it ordered that, from the date of certification, WVAWC was legally forbidden to make any unilateral changes in the terms and conditions of employees. *Id*. ¶ 13-16. This "status quo" is required by law to remain in place between the Union and the Defendant until they either arrive at an impasse in their collective bargaining negotiations or agree on a new CBA. *Id.* ¶¶ 9,14. The Union and WVAWC have been negotiating but have not either reached an impasse or agreement on a complete CBA. *Id*. ¶ 15. They have, however, made identical "just cause" proposals to each other during negotiations. *Id*. ¶ 17. Further, at the time of the negotiations, WVAWC was required to honor the terms and conditions of the status quo stemming from the original CBA, which included a requirement that no discipline or discharge from employment may occur unless just cause for either action exists. *Id*. ¶ 16.

Three individuals, plaintiffs Earl Dishman, Adam Wellman, and Arlie Crane were beneficiaries of these contracts as they were employees of WVAWC at the time they were applicable. *Id.* ¶¶ 19-20. On July 30, 2020, these individuals were allegedly either disciplined or discharged in violation of the just cause provision. *Id*. ¶¶ 26, 27, 33, 34, 40, 41. Parties used the

grievance procedure that carried over as part of the status quo but were unable to resolve their differences. *Id*. ¶ 21. There is no status quo term providing for compulsory arbitration or any type of dispute resolution, short of litigation. *Id*. ¶ 22. WVAWC refuses to consent to any dispute resolution procedures, so Plaintiffs have filed the instantaneous action, alleging a violation of the terms and conditions of employment. *Id*. ¶¶ 23-24.

## II. LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir.1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*.

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."[1]

---

[1]*Compare Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (holding that if a motion implicates the merits of a cause of action, the district court should find jurisdiction exists and treat the objection as a direct attack on the merits of the

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams v. Bain*, 697 F.2d 1213,1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citations omitted).[2]

### B. Failure to State a Claim

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at

---

plaintiff's case). *See also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) (recognizing that "in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute[,] [i]t is the better view that . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits")).

[2]*See also Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (discussing difference between facial and factual attacks under Rule 12(b)(1); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (same).

the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal citations and quotations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III. ANALYSIS

#### A. Jurisdiction under the LMRA

To assert a cause of action under Section 301 of the Labor Management Relations Act ("LMRA"), Plaintiffs must demonstrate that there was a violation of a contract between an employer and a labor organization. *See* U.S.C. § 185(a). Section 301(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301(a) "provides for suits in the district courts for violation of collective-bargaining contracts between labor organizations and employers*." Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554. 561 (1976). The Supreme Court has confirmed that the provision "confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 656 (1998). Under existing Fourth Circuit law, a plaintiff "must allege breach of an existing collective bargaining contract in order to avail itself of jurisdiction under § 301 of the act." *A.T. Massey Coal Co., Inc. v. International Union, United Mine Workers of America*, 799 F.2d 142, 146 (4th Cir. 1986).

Defendant argues that there is no contract because there is no existing CBA between these two parties. Def.'s Mem. in Supp. at 14-18, ECF No. 13. Accordingly, because a contract is a jurisdictional prerequisite, this Court does not have subject matter jurisdiction over the case. *Id.* at 13-14. Plaintiffs concede that there is no existing CBA between itself and Defendant; however, Plaintiffs argue that there is contract within the meaning of the Act – either an implied contract or a limited express agreement. Pls.' Resp. at 2, 8-13, ECF No. 15. Further, Plaintiffs argue that the contract requirement does not deprive this Court of jurisdiction, because of the Supreme Court's

-6-

ruling in *Arbaugh,* which instructs district courts to treat "a threshold limitation on a statute's scope" as non-jurisdictional unless Congress has clearly stated otherwise. *See id.* at 6 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006)).

Because of this command, some circuits have reconsidered prior holdings and concluded that the contract requirement is not a jurisdictional prerequisite for a Section 301(a) claim under *Arbaugh's* test, after evaluating congressional intent and the practical real-world considerations of treating a requirement as jurisdictional. *See Winnett v. Caterpillar Inc*. 553 F.3d. 1000, 1005-6 (6th Cir. 2009); *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009) (per curiam); *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66,* 580 F.3d 185, 190 (3d Cir. 2009). Instead, it is merely an element of a plaintiff's merits claim. *See id.*

However, other circuits examining the issue have come to the opposite conclusion, finding that an alleged violation of a contract is a jurisdictional requirement. *See ABF Freight Sys v. Int'l Broth. of Teamsters*, 645 F.3d 954 (8th Cir. 2011). The Eighth Circuit noted that the *Arbaugh* decision was later clarified when the Supreme Court stated "Congress ... need not use magic words in order to speak clearly on this point.... When a long line of this Court's decisions left undisturbed by Congress, has treated a similar requirement as "jurisdictional," we will presume that Congress intended to follow that course." *Id*. at 962. (quoting *Henderson v. Shinseki,* 562 U.S. 428, 436 (2011) (citations omitted). It then decided that the Supreme Court's decisions on Section 301(a) were clear and established the jurisdictional nature of the requirement. *See id* at 962-63. It concluded that "because Congress has not disturbed the Court's long line of decisions treating section 301(a) as jurisdictional, this court cannot agree with the Third and Sixth Circuits." *Id*. at 363.

The Fifth Circuit directly considered whether an alleged labor contract violation (when the existence of a contract was in dispute) can support federal subject matter jurisdiction. *Houston Refin., L.P., v. United Steel, Paper and Forestry Rubber, Mfg.*, 765 F.3d 396, 404 (5th Cir. 2014). It found that "factual proof of a labor contract is *not* necessary for such jurisdiction, and that if a court finds that such a contract is invalid, it should dismiss for failure to state a claim." *Id*. (citing *Textron*, 523 U.S. at 658) (emphasis in original). However, it went on to find that Section 301 claims only encompass cases involving alleged contract violations. *Id*. at 405.The Fourth Circuit has not considered this exact issue since its pre-*Arbaugh* holding in *A.T. Massey Coal*. However, it has since considered whether Section 301(a)'s exhaustion requirement is jurisdictional. *See Staudner v. Robinson Aviation, Inc*., 910 F.3d 141, 145-48 (4th Cir. 2018).

This Court is persuaded by the Sixth Circuit's reasoning, and finds that nothing in Section 301(a) indicates that Congress intended to attach subject-matter jurisdiction and much less did so clearly. *See Winnett*, 553 F.3d 1000, 1006 (6th Cir. 2009). "The only direct mention of jurisdiction in the statute refers to personal jurisdiction, not subject-matter jurisdiction." *Id*. Further, all references to jurisdiction in the statute are done so with the purpose of easing access to the federal courts. The structure of the provision also suggests that the contract requirement is not jurisdictional. All the elements of the claim for a breach of union contract appear in the same subsection but nothing in the statute suggests that some of the elements, but not others, have subject-matter-jurisdictional consequences. *See id*. Additionally, the real-world considerations of treating such a requirement as jurisdictional weigh against that finding. *See id.* Accordingly, this Court finds that the contract requirement is not jurisdictional.

B. Failure to State a Claim

Next, the Court must consider whether the parties have alleged the existence of a contract to withstand a motion to dismiss for failure to state a claim. Parties do not dispute that no current CBA between the two parties exist. *See* Def.'s Mem. at 3, ECF No. 13; Am. Compl. ¶ 15. Therefore, no express contract between the Union and WVAWC can serve as a basis for the Plaintiffs' claim. Plaintiffs instead argue that the status quo obligation created an implied contract or limited express agreement, which WVAWC breached in terminating or disciplining the Plaintiff employees. Pls.' Resp. Brief at 8-14, ECF No. 15. Plaintiff contends that that Section 301's language would encompass these sorts of contracts. *Id*. Defendant counters that the undisputed facts are that the parties have not negotiated a labor contract, and, that there is no contract under either of Plaintiffs' theories. *See* Def.'s Reply at 3-8, ECF No. 16. Therefore, there is no labor contract that has been or can be breached to state a cause of action under Section 301 and the claim must be dismissed. *Id*.

In *Retail Clerks*, the Supreme Court made clear that Section 301 should be read broadly, noting that "[a] federal forum was provided for actions on other labor contracts besides collective bargaining agreements." *Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc*. 369 U.S. 17, 26 (1962). It found that an alleged violation of a strike settlement agreement could confer jurisdiction to federal courts, because "the statute's purpose would be defeated by excluding such contracts from the type of 'contracts' cognizable under § 301(a)." *Id*. at 27. It was enough, in that case, that the strike settlement was "an agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Id*. Similarly, the Fourth Circuit has recognized the need to construe the NLRA broadly, finding that an election agreement was a contract enforceable under the Act. *See Amalgamated Clothing &*

*Textile Workers Union, AFL-CIO v. Facetglas, Inc.,* 845 F.2d 1250 (4th Cir. 1988). *See also Parks v. International Broth. Of Elec. Workers*, 314 F.2d 886, 914-16 (4th Cir. 1963) (recognizing that the scope of Section 301(a) 'contracts' is not entirely clear but that the Supreme Court favors broad view).

  *i. Implied Contract*

  Defendant contends that the NLRA's statutory status quo obligation cannot form the basis of a contract implied in law. Def.'s Mem. at 15. Plaintiffs respond that the status quo can be a contractual concept, the violation of which can create a contract subject to enforcement under the NLRA. Pls.' Resp. at 9-10. Defendants note again that the statutory status quo obligations do not transform into contractual obligations either under the null and void prior CBA or as a new CBA. Def.'s Reply at 6.

  NLRB precedent firmly establishes that when one union unseats another as the collective bargaining representative, through the Board's representation election and certification process, the labor contract with the incumbent prior union is void as a matter of law. *See Children's Hosp. and Research Ctr. of Oakland*, 364 NLRB No. 114, 6 (Aug. 26, 2016) ("Once employees replace one union with another, any existing collective-bargaining agreement is no longer in effect...."). There is no dispute between the parties that the Union unseated the incumbent union on September 5, 2018. *See* Am. Compl. ¶ 12. Accordingly, the CBA between Defendant and the prior union became null and void at that time.

  However, is also firmly established that the new union and the employer must honor the terms of the prior CBA as the "status quo" until they negotiate a new written agreement between them. *N.L.R.B v. Katz*, 369 U.S. 736, 743-47 (1962). The status quo concept is a statutory protection for employees that prohibits employers from making unilateral changes to their

-10-

employees' terms and conditions of employment during this transitional time. *Id*. at 477-78. The "obligation to maintain the status quo arises out of the [National Labor Relations] Act, not the parties' contract." *Nexstar Broad., Inc*. 369 NLRB No. 61, 4 (Apr. 21, 2020); *see also Cofire Paving Corp. & Loc. 175 United Plant and Prod. Workers,* 359 NLRB No. 10, 6 (Sept. 28, 2012) (holding that the terms and conditions of the status quo are "no longer contractual terms but terms imposed by law.").

This statutory status quo exists precisely because a new union and an employer do not have a contractual relationship after the expiration of a prior CBA, and so it would be illogical to provide that a violation of it could form the basis of a contract claim within the meaning of Section 301. *See Litton Fin. Printing Div., a Div. of Litton Bus. Sys.. Inc., v. N.L.R.B.* 501 U.S. 190, 206-07 (1991) ("[A]n expired contract has by its own terms released all its parties from their respective contractual obligations, …. [a]lthough after expiration most terms and conditions of employment are not subject to unilateral change… those terms and conditions no longer have force by virtue of the contract."). Grievances that exist under clauses that survive the expiration of the CBA may rise to the level of an implied contract, but it is not alleged that the just cause provision was explicitly intended to survive the expiration of the first CBA. *Id*. at 205-07.

Further, the Board has indicated that it supports the view that the statutory quo cannot evolve to serve as a contract in its own right. In a case involving nearly identical circumstances, the Board wrote as amicus to note that this interpretation of contract "seeks to upend decades of settled labor law by stretching implied contracts theories far beyond their breaking point." Statement of Amicus at 6, *Util. Workers United Ass'n., Local 537 v. Pennsylvania Am. Water Co.*, No. 2:20-CV-00846 (W.D. Pa. Jan. 20, 2021) (ECF No. 25-1). Specifically, it worried that allowing these types of claims would "significantly hamper the Board's ability to remedy the Union's

alleged unlawful refusal to bargain" because the Union could assert that "the existence of an implied contract absolves it of unfair-labor-practice liability for refusing to bargain." *Id*. at 8. This would "substantially impair the Board's power to prevent and remedy unfair labor practices." *Id*. The NLRB noted that, in its initial decision on the case, it was "not persuaded" by an argument which bootstrapped the employer's legal duty to maintain the status quo while negotiating with the Union for an initial contract into an option to revive the then-defunct, former CBA. *Util. Workers United Ass'n, Loc. 537 & Pennsylvania Am. Water Co*., 369 NLRB No. 99, 2, n.5 (June 8, 2020). Because of this established precedent and the Board's opinion, the Court finds that no implied contract has been alleged to survive a motion to dismiss.

### ii. Limited Express Agreement

Plaintiffs argue, in the alternative, the parties have reached a limited express agreement on the issue of just cause discipline which can serve as a "contract" for the purposes of Section 301. Pls.' Resp. at 13. The limited express agreement arose when the parties made similar proposals during collective bargaining negotiations. *Id*. at 14. Defendant argues that such bargaining proposals cannot create any type of express agreement on that issue until there is an agreed-upon overall CBA. Def.'s Mem. at 18. Further, it notes that the bargaining proposals exchanged by the parties are so different as to not even constitute a tentative agreement. *Id*. at 18-19.

It is settled NLRB precedent that tentative agreements made during collective bargaining negotiations are not binding on the parties until a final bargaining agreement is reached. *See Sec. Walls, Inc. & Int'l Union, Sec. Police & Fire Pros. of Am*., 365 NLRB No. 99, 5 (June 15, 2017); *Taylor Warehouse Corp.*, 314 NLRB 516, 517 (1994), *enf'd* 98 F.3d 892 (6th Cir. 1996) ("Under Board law, tentative agreements made during the course of contract negotiations are not final and binding.").

However, the Fourth Circuit has noted that parties' manifestations of intent might suffice to constitute a contract despite the absence of a completed CBA. *See Cumberland Typographical Union No. 244 v. Times and Alleganian Co.*, 943 F.2d 401, 405 (4th Cir. 1991) (citing *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Loc. 1603 v. Transue & Williams Corp.*, 879 F.2d 1388, 1392-93 (6th Cir. 1989) ("[A] labor contract may fall within the parameters of Section 301 even if the employer and the union have not resolved disputes over substantive terms…."). Similarly, an employer may be bound by a contract it has not signed if it has, by its conduct, manifested an intent to abide by it. *N.L.R.B. v. Haberman Const. Co.,* 641 F.2d 351, (5th Cir. 1981); *Super Save*, 273 NLRB 20, 16 (1984).

At this stage, the Amended Complaint avers that the parties "have each made identical proposals to the other [on the just cause issue] and… they have each agreed to be bound by [that] requirement…." Am. Compl. ¶ 17. This at least creates a factual issue about what parties have agreed to, and whether a contract is in existence. Defendants claim that the bargaining proposals exchanged show that parties have not even reached a tentative agreement on the issue. *See* Exs. J and L, ECF No. 12-10, 12-12. However, the compilations of proposals appear to at least facially, use identical language. *See id*. As such, an alleged contract is in place for the purposes of this Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons the Motion to Dismiss is **DENIED**. The Court has jurisdiction over this action. Plaintiffs may not proceed on their implied contract theory, but they may proceed on their limited express agreement theory.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      November 23, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE